**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pearl Gardner, | No. CV-25-02828-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Nationstar Mortgage LLC, et al., | |
| Defendants. | |

At issue are concerns of potential violations of Arizona consumer protection laws and the unauthorized practice of law. Through these proceedings, brought by Plaintiff to halt a foreclosure of her home, the Court learned of non-party document preparers seeming to hold themselves out as attorneys and using undisclosed artificial intelligence platforms ("AI") to draft documents used in this litigation on Plaintiff's behalf. By all appearances, these document preparers purported to help her prevent foreclosure of her home while diverting funds she could have used towards the mortgage payment it and preparing claims without legal basis for Plaintiff to file. Thus, the Court brings the matter to the attention of the State Bar of Arizona and the Attorney General of Arizona. The Court instructs the Clerk of Court to provide a copy of this order to each for investigation, if appropriate, and such further action as these entities deem necessary.[1]

**I.    BACKGROUND**

After the death of her husband, Plaintiff took over the financial responsibilities of

---

[1] Emily Ruth, a second-year law student at the Sandra Day O'Connor College of Law at Arizona State University, helped draft this Order.

her household; as a result, she faced foreclosure and initiated this action. (Doc. 33 at 2.) A recognized title company referred Plaintiff to Clearpoint. (*Id.*) Fearful of losing her home, Plaintiff hired Clearpoint to prepare her legal documents. (*Id.*)

Plaintiff did not understand any of the legal documents she submitted to the Court and followed instructions from Clearpoint throughout the litigation process because her contacts called themselves the "Litigation Team." (*Id.*) Clearpoint seemingly prepared, and Plaintiff submitted, a Verified Complaint (Doc. 1-1 at 42), a Motion for Temporary Restraining Order and Preliminary Injunction to Halt Foreclosure Proceedings (Doc. 1-1 at 5), a Proposed Order Granting Temporary Restraining Order (Doc. 1-1 at 14), an Amended Motion for Temporary Restraining Order and Preliminary Injunction to Halt Foreclosure Proceedings (Doc. 23 at 11), and a Notice of Self-Representation in the Superior Court of the State of Arizona (Doc. 1-1 at 11). Defendant Nationstar Mortgage LLC ("Nationstar") then removed the case. (Doc. 1 at 1.)

Plaintiff continued to follow advice and instructions from Clearpoint throughout federal proceedings. (Doc. 33 at 2.) Clearpoint appears to have prepared a Motion for Extension of Time (Doc. 11), an Affidavit in Support of Amended Motion for Preliminary Injunction (Doc. 12), an Affidavit to Supplement Amended Motion for Preliminary Injunction (Doc. 18), a Motion to Appear Remotely (Doc. 22), and a Motion to Remand to State Court (Doc. 25), all of which Plaintiff filed.

After removing the case, Nationstar filed responsive pleadings, in which it highlighted over sixty instances of inapplicable law, nonexistent cases or legal principles, and misconstrued holdings and quotations in Plaintiff's Complaint and Amended Motion for Preliminary Injunction. (Docs. 13, 16.)

The Court then issued an Order to Show Cause for why her motion should not be denied because of the hallucinated or misconstrued legal authorities in Plaintiff's Amended Motion for Preliminary Injunction. (Doc. 19 at 1.) The Order to Show Cause prompted Plaintiff to reach out to an attorney friend, who explained the legal documents Plaintiff had filed and helped her understand that Clearpoint cited nonexistent or misrepresented law

throughout her pleadings. (Doc. 33 at 2-3.)

At the hearing on Plaintiff's motion for a preliminary injunction, Plaintiff conceded that she had not met the requirements for a preliminary injunction, conveyed that she intended to dismiss her case because the third-party document preparation company she hired put together documents that she did not understand, and realized that she probably could not prevail in court. (Doc. 37 at 6-7.) She also suggested she would rather spend money on trying to reinstate her loan than on further litigating the case. (*Id.* at 7.) Then, in her response to the Order to Show Cause, Plaintiff disclosed the specifics around Clearpoint's role and explained that she was unaware that Clearpoint used AI to create the filings. (Doc. 33 at 2-3.)

In Plaintiff's response to the Order to Show Cause, she explained that she had no legal understanding of the proceedings to that point and relied on Clearpoint for legal advice. (*Id.*) She revealed that she paid Clearpoint $1,000 per month from April 2024 to September 2025, and that her main contact at Clearpoint was Juan Rodriguez. (*Id.* at 2.) Plaintiff explained that given her new information, she was working with Nationstar's counsel to reinstate her loan and reach a stipulation of Dismissal. (*Id.* at 3.)

## II. DISCUSSION

Clearpoint's activities in this case raise concerns that it may have engaged in the unauthorized practice of law in Arizona and misled Plaintiff regarding the quality and nature of its document preparation services by using undisclosed AI.

### A. Unauthorized Practice of Law

While Arizona does not currently prohibit the use of AI to prepare court filings, it does take issue with unlicensed entities and individuals practicing law. The Arizona Rules of the Supreme Court prohibit any person or entity who is not a member of the Arizona State Bar from providing legal services or using a designation "reasonably likely to induce others to believe" they are allowed to practice law. Ariz. R. Sup. Ct. 31.2. When defining legal services and the practice of law, the Arizona Supreme Court has noted that any duties customarily performed by lawyers "through the centuries" constitute the practice of law.

*In re Creasy*, 198 Ariz. 539, 541-42 (2000). Document preparation has been held to be one of these functions, even in matters as simple as selecting and filling out a blank form, *State Bar of Ariz. v. Ariz. Land Title & Tr. Co.*, 90 Ariz. 76, 89 (1961); *see also* Ariz. R. Sup. Ct. 31(b)(3) (including within the "practice of law" the act of "preparing a document, in any medium, on behalf of a specific person or entity for filing in any court, administrative agency, or tribunal").

The Court has concerns that Clearpoint engaged in the unauthorized practice of law. A major part of an attorney's role in litigation is preparing and filing motions with the Court. According to Plaintiff, Clearpoint prepared motions and other pleadings on her behalf for filing with the Court. (Doc. 33 at 8.) *See* Ariz. R. Sup. Ct. 31(b)(3). Plaintiff's points of contact at Clearpoint were Juan Rodriguez and Paul Vierra. (*Id.* at 2.) From the Court's review of the State Bar's Member Directory, neither are licensed to practice law in Arizona.[2] Furthermore, Plaintiff's contacts at Clearpoint called themselves the "Litigation Team" (Doc. 33 at 2). The label "Litigation Team" could be within the "other equivalent words" contemplated by Rule 31.2(b), since litigation is a primary function of attorneys and may "reasonably . . . induce others to believe" that Clearpoint was authorized to practice law. As a result, the Court is concerned that Clearpoint's activities and characterizations may have violated Ariz. R. Sup. Ct. 31.2. But whether Clearpoint offered legal services was not an issue before the Court in this case. The Court thus refers investigation of this question to the Arizona State Bar, should the State Bar find such an investigation pertinent.

B.   **Consumer Protection Concerns**

Arizona prohibits any person or entity from misrepresenting, omitting, concealing or otherwise engaging in deception regarding material facts with the intent that consumers will rely on those misrepresentations in commercial transactions. Ariz. Rev. Stat. § 44-1522. This prohibition extends to the sale of services. *Id.* § 44-1521(5). The Court is

---

[2] The Court also reviewed the State Bar of California's directory for the Clearpoint contacts. Three individuals named Juan Rodrigue are registered members, but because of the common nature of the name, the Court does not know whether any of those California attorneys were involved in this matter.

concerned that Clearpoint may have engaged in deceptive practices by using AI without disclosing such to Plaintiff, which resulted in inapplicable and hallucinated legal authority, and that this misrepresentation induced Plaintiff to undertake unnecessary litigation expenses, including Clearpoint's fee. The Court is further concerned, as discussed above, that Clearpoint inappropriately positioned itself to suggest it could assist with Arizona court filings.

Clearpoint appears to have used AI to prepare filings for Plaintiff without her knowledge or consent. The Complaint and Amended Motion for a Preliminary Injunction have all the hallmarks of AI; both documents used an unusual structure, cited hallucinated cases and statutes, and misinterpreted existing law. (Doc. 1-1 at 42-177; Doc. 23 at 11-38 (featuring many examples of hallucinated or misinterpreted cases, statutes, and legal theories)); (Docs. 13, 16 (highlighting hallucinated or misinterpreted law)). It appears that Plaintiff discovered Clearpoint's use of AI in their document preparation services as a direct result of the Order to Show Cause. (Doc. 33 at 3.) Until that point, Plaintiff relied on Clearpoint and thought them qualified. (*Id.* at 2-3.) Her response also suggests that she only wanted her loan reinstated and "[did] not want to pursue any litigation contrary to reinstatement." (Doc. 33 at 3.) So even if Clearpoint had not used undisclosed AI, it still may have misled her by preparing and instructing her to file documents against her interest. (*Id.*) Whether Clearpoint intended to induce Plaintiff to rely on its apparent misrepresentations is not before the Court in this matter.

Perhaps most troubling, Clearpoint's preparation of motions and other filings, potentially without attorney oversight, and seemingly undisclosed use of AI diverted Plaintiff's limited resources. Clearpoint charged Plaintiff $1,000 per month for services while she was in a vulnerable position with respect to her home (*id.* at 2), further exacerbating the possibility that she would lose it. Clearpoint also caused this Court and Defendant to expend significant resources in attempting to research several hallucinated cases, preparing for hearings, and drafting legitimate legal documents based in fact and good law in response to a Complaint and Motion for Preliminary Injunction that lacked

legal basis.

Thus, the Court refers this matter to the Arizona Attorney General's Office for potential investigation of Clearpoint under any applicable consumer protection law, if the Attorney General finds such actions warranted.

**IT IS THEREFORE ORDERED** directing the Clerk of Court to send a copy of this Order, the Official Transcript of the Preliminary Injunction Hearing (Doc. 37), and the Response to Order to Show Cause (Doc. 33), to the State Bar of Arizona at 4201 North 24th Street, Suite 100, Phoenix, Arizona 85016.

**IT IS FURTHER ORDERED** directing the Clerk of Court to send a copy of this Order, the Official Transcript of the Preliminary Injunction Hearing (Doc. 37), and the Response to Order to Show Cause (Doc. 33), to the Arizona Attorney General's Office, Consumer Protection Division at 2005 North Central Avenue, Phoenix, Arizona 85004.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to send a copy of this Order via email to Plaintiff Pearl Gardner at dolphin853643492@gmail.com.

Dated this 9th day of January, 2026.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge